Richard McINTYRE, Appellant,

v.

STATE of Alaska, Appellee.

No. 244.

Supreme Court of Alaska.

March 16, 1963.

Fred D. Crane and T. N. Gore, Jr., Fairbanks, for appellant.

Robert C. Erwin, Dist. Atty., Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

Defendant was indicted for first degree murder. The evidence showed that while in a state of intoxication he had beaten his wife savagely, causing her death. A jury convicted defendant of second degree murder, and he has appealed. There are two questions presented: (1) whether the trial judge erred in not permitting the jury to hear the testimony of a psychiatrist, Dr. Cheatham, regarding the defendant's mental condition; and (2) whether error was committed when photographs of the body of the deceased were admitted into evidence.

*The Psychiatrist's Testimony.*

Defense counsel stated that he intended to ask Dr. Cheatham a hypothetical question based upon facts in evidence, which the doctor would be asked to assume for the purpose of the question. Succinctly stated, those facts were as follows: defendant was 29 years old, of Eskimo and Caucasian extraction, and had been born and reared and received a sixth grade education in the small village of Eek, Alaska. His wife was a girl of the same age who had grown up in the same village. They married and had five children. Defendant had a history of sleep walking as a child. On several occasions during the year prior to his wife's death, defendant had consumed large amounts of alcohol and had become quite drunk. When he would get drunk, he would stay that way for a period of one day to a week. On one occasion he and his wife

got drunk together, and when they became sober they discovered that defendant had been severely beaten about the head and that his wife had been beaten also. On December 22, 1960, defendant proceeded to become intoxicated. Between then and until about midnight of December 25 he drank from one-half to two quarts of whiskey each day, and while in a drunken condition apparently killed his wife by severely beating her about the head and body. When defendant recovered conscious control of himself on December 26, he was in a disoriented state, having no memory or comprehension of what had happened during the preceding four days.

Based upon these facts Dr. Cheatham was asked if he had an opinion as to whether defendant would be suffering from a mental disease or derangement. The state objected, the jury was excused, and further testimony of this witness was given out of the presence of the jury. The doctor then testified that there was insufficient data for him to suggest that defendant was suffering from a state of pathological intoxication [1]. He gave his opinion that defendant was suffering from an "acute brain syndrome of a toxic nature", which he defined as "That means that it is—the cause of this condition is alcohol—consumed in sufficient quantity to have a toxic effect on the brain." The doctor also gave his opinion that at the time defendant killed his wife he was deprived of his capacity to distinguish right from wrong; that his ca-

pacity to formulate an intent to commit a wrongful act or to premeditate was severely impaired, if not entirely absent; and that he was unable to exercise purposeful control over his actions or behavior. In answer to a question from the trial judge, the doctor said that his testimony would be substantially the same even if defendant had not had a previous history of drinking. After this offer of proof, the judge ruled that he would not permit the jury to hear Dr. Cheatham's testimony as to defendant's mental state, and that the issue of insanity would not go to the jury.

 The judge was correct in his ruling. We said in Chase v. State: "the law is intended to exculpate from accountability for actions only those who suffer from a major mental disorder or disease — those who, because of some mental derangement, are lacking in reason or understanding or realization." [2] A state of mind created by voluntary intoxication, such as that indicated by evidence of defendant's conduct, is not a major mental disorder or disease or mental derangement which amounts to legal insanity. The majority of courts have drawn a distinction between (1) the mental effect of intoxication, which is the immediate result of a particular alcoholic bout; and (2) an alcoholic psychosis [3], such as delirium tremens, resulting from long continued habits of excessive drinking. The former does not amount to legal insanity, whereas the latter may.[4] We adopt this majority view,

---

1. Dr. Davidson defines "pathological intoxication" as "An excessive reaction to moderate amounts of alcohol; a period of frenzy precipitated by drinking, for which the subject subsequently has amnesia. Also called *mania a potu*." Davidson, Forensic Psychiatry 330 (1952) Cavanagh & McGoldrick define the term as follows: "Pathological intoxication is an acute alcoholic psychosis in which the individual reacts to the ingestion of even small amounts of alcohol with violence, delusions, or hallucinations. It is usually followed by a profound sleep and amnesia for the attack." Cavanagh & McGoldrick, Fundamental Psychiatry 426 (1958).

2. Chase v. State, Opinion No. 78, 369 P.2d 997, 1001 (Alaska 1962).

3. The term "alcoholic psychosis" has been defined as "Insanity due to alcohol", Davidson, Forensic Psychiatry 316 (1952); and as "grave mental disorder found in connection with excessive use of alcohol which was imbibed because of defective personality integration and resulting unsolved conflicts." Cavanagh & McGoldrick, Fundamental Psychiatry 426 (1958).

4. Rucker v. State, 119 Ohio St. 189, 162 N.E. 802 (1928); Cheadle v. State, 11 1915E, 1031 (1915); State v. Trapp, 56 Okl.Cr. 566, 149 P. 919, 921–922, L.R.A.

which is in harmony with a long established legislative policy that voluntary intoxication is no defense to a crime, except insofar as the jury may take it into account in determining purpose, motive or intent.[5]

In the hypothetical question posed to Dr. Cheatham, there were facts showing that defendant had been in a state of voluntary intoxication when he brutally assaulted and killed his wife. There were no facts showing a long continued habit of excessive drinking, such as might have resulted in an alcoholic psychosis. The doctor said there was insufficient data to suggest to him that defendant was suffering from a state of pathological intoxication, and the doctor did not appear to attach any particular significance to the fact that during the preceding year defendant had occasionally gone on drunken bouts. Since there were no facts in the hypothetical question which could give rise to the defense of legal insanity, the trial judge was correct in refusing to permit Dr. Cheatham to answer the question and give the jury his opinion as to whether defendant had been suffering from a mental disease or derangement during his period of intoxication.

*Photographs of Deceased.*

Over defendant's objection, photographs of the partially unclad body of deceased were admitted into evidence. Defendant contends that this was reversible error be-cause the only purpose the pictures could have served was to inflame the minds of the jurors and prejudice them against defendant.

Defendant was accused in the indictment of having killed his wife by beating her about the head and body. Whether or not she had been so beaten was a fact in issue in the case. There was testimony that a large area of deceased's body was covered by black and blue marks, and that her face was badly discolored and swollen. The photographs clearly portray the condition of the body and face as described in the testimony, and thus were relevant with respect to the issue of whether deceased had been beaten as alleged in the indictment. Because they were relevant, the photographs were admissible—unless they possessed some inherently prejudicial. qualities which would outweigh their evidential value and impair defendant's right to a fair and impartial trial.[6] We find that they do not have such qualities. There is nothing unusually gruesome or repulsive or horrifying about them which would make them more harmful than illuminating. The trial judge did not abuse his discretion in admitting the photographs.

In his statement of points on appeal defendant contends that the state failed to sustain its burden of proof, that the verdict was contrary to the weight of the evidence

Or. 588, 109 P. 1094 (1910); State v. Kidwell, 62 W.Va. 466, 59 S.E. 494, 13 L.R.A.,N.S., 1024 (1907); Annot., 12 A.L.R. 861, 895–900 (1921), 79 A.L.R. 897, 906–909 (1932); Weihofen, Mental Disorder as a Criminal Defense 124–128 (1954); 1 Wharton, Criminal Law and Procedure § 46 (1957); Note, Intoxication as a Criminal Defense, 55 Colum. L.Rev. 1210, 1219–1221 (1955).

5. Section 65-2-3 ACLA 1949 [AS 11.-70.030] provided: "That no act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition; but whenever the actual existence of any particular motive, purpose, or intent is a necessary element to constitute any particular species or degrees of crime, the jury may take into consideration the fact that the defendant was intoxicated at the time in determining the purpose, motive, or intent with which he committed the act." This has been the law of Alaska since Congress prescribed a criminal code and a code of criminal procedure for the District of Alaska in 1899. Act of March 3, 1899, § 142, 30 Stat. 1300.

6. State v. Bucanis, 26 N.J. 45, 138 A.2d 739, 743, 73 A.L.R.2d 760, cert. denied, 357 U.S. 910, 78 S.Ct. 1157, 2 L.Ed.2d 1160 (1958); Rivers v. United States, 270 F.2d 435, 437 (9th Cir., 1959), cert. denied, 362 U.S. 920, 80 S.Ct. 674, 4 L. Ed.2d 740 (1960). An extensive annotation on the subject of admissibility of photographs of corpses in prosecutions for homicide is found in 73 A.L.R.2d 769 (1960).

and was not supported by the evidence, and that the court erred in refusing to grant defendant's motions for a judgment of acquittal and for a new trial. These points have been completely ignored by defendant in his brief, so we shall not consider them.[7]

The judgment is affirmed.

7. DeArmond v. Alaska State Development Corp., Opinion No. 116, 376 P.2d 717, 725 (Alaska 1962); City of Fairbanks v. Schaible, Opinion No. 97, 375 P.2d 201, 211 (Alaska 1962); Parks v. Brown, Opinion No. 57, 368 P.2d 220, 222 (Alaska 1962); Veal v. Newlin, Inc., Opinion No. 53, 367 P.2d 155, 157 (Alaska 1961).